**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANDRAS MAHOLANYI,

      Plaintiff,

v.                                                                    Case No. 3:14-cv-1161-J-32JRK

SAFETOUCH OF TAMPA, INC.,

      Defendant.

_____

## O R D E R

      SafeTouch, a company providing security systems and related services, hired Drew Maholanyi[1] as the branch manager of its Tampa, Florida office. Eighteen months later, they fired him and replaced him with a younger individual. Maholanyi filed this action against SafeTouch alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Florida Civil Rights Act ("FCRA"), Chapter 760, Florida Statutes. SafeTouch filed a motion for summary judgment, to which Maholanyi filed a response and, with leave of Court, SafeTouch filed a reply, and Maholanyi filed a surreply. (Docs. 26, 32, 36, 37.) On February 11, 2016, the Court held a hearing on the motion for summary judgment, the record of which is incorporated herein. Following the hearing, the case was administratively closed while the parties engaged in settlement discussions. After a

_____

[1] Maholanyi goes by "Drew" (Maholanyi Dep. 4:13-16 (Doc. 25-1)), and other SafeTouch employees refer to him by that name in their testimony.

settlement conference with the Magistrate Judge resulted in impasse, SafeTouch moved to reopen the case and for consideration of its motion for summary judgment. (Doc. 49.)

## I.     BACKGROUND

In December 2010, Bruce Allen, General Manager of SafeTouch Security, contacted Maholanyi about becoming the branch manager of SafeTouch's Tampa, Florida location. (Doc. 32 at 2.) Allen and Maholanyi knew each other from previous work in the security industry. (Id.; see also Maholanyi Dep. 40:4-16; Allen Dep. 10:17-11:10 (Doc. 25-5).)

Maholanyi accepted the position and worked as the Tampa branch manager from approximately January 3, 2011 to July 15, 2012. (Doc. 2 at 2; Doc. 32 at 3.) Fifteen to twenty employees reported to Maholanyi, and his duties consisted of sales; recruiting, hiring, training, and motivating salespeople; managing the day-to-day office operations, which included daily sales meetings and distributing sales leads; and attending quarterly branch manager meetings in Jacksonville, Florida. (Doc. 32 at 3.) According to Maholanyi, he broke sales records, was commended for doing a good job, received monthly performance bonuses, and received a raise in June 2012. (Id. at 4.) However, in July 2012, at Allen's direction, SafeTouch's marketing manager, James Salvatore, informed Maholanyi that SafeTouch needed to "make a change," and Maholanyi resigned in lieu of termination. (Doc. 32 at 5; Doc. 2 at 2-3.) Maholanyi then filed a charge of discrimination with the EEOC and received a right-to-sue letter. (Doc. 2 at 2; Doc. 25-3 at 2-4.)

Maholanyi alleges that he was subject to hostility, treated poorly, and discharged because of his age (Doc. 2 at 3); as a result, he seeks general, compensatory, punitive, and liquidated damages; equitable relief; and attorneys' fees and costs. (Doc. 2 at 4-5.) SafeTouch denies the allegations and asserts that Maholanyi was terminated[2] due to his poor performance, not his age. (Doc. 26.)

## II.   STANDARD OF REVIEW

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The movant bears the burden of showing the absence of dispute as to material facts, and upon such a showing the burden shifts to the non-moving party to establish that a genuine dispute exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The evidence must be viewed in favor of the non-moving party, and all inferences drawn in his favor. Anderson, 477 U.S. at 255.

---

[2] "Termination" is used throughout this Order to describe Maholanyi's resignation in lieu of termination.

### III.   ANALYSIS[3]

The purpose of the ADEA is to "prohibit arbitrary age discrimination in employment," 29 U.S.C. § 621(b), and, relevant here, the statute "prohibits employers from firing employees who are forty years or older because of their age," Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015) (citing 29 U.S.C. § 623(a)(1)). "To assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action[,]" which can be done using direct or circumstantial evidence. Id. (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009), and Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (per curiam)).

"Direct evidence is that which establishes discriminatory intent without inference or presumption. But '[o]nly the most blatant remarks whose intent could only be to discriminate on the basis of age constitute direct evidence.'" Morrison v. City of Bainbridge, Ga., 432 F. App'x 877, 880 (11th Cir. 2011) (quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1993)) (citation omitted). By contrast, "[i]f the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (citing Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir.

---

[3] Because the statutes are similar, the framework for determining whether there has been discrimination under the ADEA is the same as that applied to age discrimination claims brought pursuant to the FCRA. Barsorian v. Grossman Roth, P.A., 572 F. App'x 864, 868 (11th Cir. 2014) (quoting Zaben v. Air Prods. & Chems., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997)). Thus, although expressly referencing only the ADEA, the Court's analysis applies to both the ADEA and FCRA claims.

1997)). Here, the Court does not find direct evidence of discrimination,[4] and therefore will evaluate Maholanyi's claims within the framework for circumstantial evidence.

In determining whether there is circumstantial evidence of age discrimination, courts apply the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Liebman</u>, 808 F.3d at 1298. Under this framework, an employee must first establish a prima facie case, which creates a presumption of discrimination. <u>Id.</u> "Once an employee has established a prima facie case, 'the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.' If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." <u>Id.</u> (quoting <u>Kragor v. Takeda Pharm. Am., Inc.</u>, 702 F.3d 1304, 1308 (11th Cir. 2012)) (citation omitted).

## A. Maholanyi has established a prima facie case of age discrimination

"To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." <u>Liebman</u>, 808 F.3d at 1298 (citing <u>Kragor</u>, 702 F.3d at

---

[4] Maholanyi's response in opposition to summary judgment addresses SafeTouch's arguments exclusively within the framework applied to circumstantial discrimination claims (Doc. 32), although in a footnote suggests that "[t]he ageist comments are direct and/or circumstantial evidence confirming an age related motive" for Maholanyi's termination. (<u>Id.</u> at 7 n.1.) However, Maholanyi testified that no one told him he was terminated because of his age. (Maholanyi Dep. 195:17-25.)

1308). SafeTouch concedes that Maholanyi was a member of the protected age group, subjected to adverse employment action, and replaced by someone substantially younger. (Doc. 26 at 13.) Thus, the only disputed factor is whether Maholanyi was qualified to serve as branch manager.

"In assessing a plaintiff's qualification for a position, [courts] examine his skills and background," and long tenure at a position permits an inference of qualification. Liebman, 808 F.3d at 1299 (citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999)). SafeTouch contends that Maholanyi was not qualified for the branch manager position because he failed to increase the Tampa branch's new unit sales,[5] and his eighteen-month tenure was too short to support an inference that he was qualified. (Doc. 26 at 13, 15-16.)

While there appears to be no bright-line minimum length of employment to warrant the inference of qualification, courts are divided as to whether a tenure of several months is long enough. Compare Aldabblan v. Festive Pizza, Ltd., 380 F. Supp. 2d 1345, 1352 (S.D. Fla. 2005) (employee who had been in position approximately seven months was not entitled to inference of qualification), and Brockman v. Avaya,

---

[5] SafeTouch cites Baker v. Sears, Roebuck & Co., 903 F.2d 1515 (11th Cir. 1990), for the proposition that "[a]n age discrimination plaintiff whose performance is gauged by sales results is not qualified for his position if the employer is not satisfied with those results." (Doc. 26 at 14-15.) However, that case is factually distinguishable, as Sears had explicit sales quotas and a "standard policy . . . to move or terminate every employee who fail[ed] to meet" the quotas, and the plaintiff was "given explicit warning" of the consequences of her failure to meet Sears' expectations. Baker, 903 F.2d at 1520. SafeTouch, by contrast, did not have such an explicit policy, and Maholanyi was never expressly told that there would be repercussions, including termination, for not increasing new unit sales. (Allen Dep. at 29:19-32:11, 50:10-13.)

Inc., 545 F. Supp. 2d 1246, 1253-54 (M.D. Fla. 2008) (ten and a half month tenure, standing alone, did not warrant inference of qualification), with Parris v. Keystone Foods, LLC, 959 F. Supp. 2d 1291, 1305 (M.D. Ala. 2013) (ten month tenure was sufficient for court to infer employee was qualified). However, it is undisputed that Maholanyi has over twenty years' experience in the security industry. (Maholanyi Dep. 40:6-7.) His prior experience, which includes a position as a branch manager for a different security company, may be considered in determining whether he was qualified to serve as SafeTouch's Tampa branch manager. Liebman, 808 F.3d at 1299; see Brockman, 545 F. Supp. 2d at 1253-54 (although ten and a half month tenure in position, standing alone, did not warrant inference of qualification, when considered with her prior work in the industry employee met her burden to demonstrate she was qualified); Brown v. Sybase, Inc., 287 F. Supp. 2d 1330, 1334, 1345 (S.D. Fla. 2003) (ten month tenure in position plus prior experience in industry was sufficient evidence that employee was qualified).

In fact, Allen recruited Maholanyi for the branch manager position because he believed Maholanyi was qualified based on his experience and background. (See Allen Dep. 98:11-14 ("I believed he was very qualified because he had been a branch manager of four branches, one of those companies actually hired him to teach all of their branch managers how to be a branch manager."); id. at 67:10-12 ("I picked Drew. I chased him twice. I called him -- before I hired him this time, I tried to hire him another time. I felt like Drew was my man.").) Salvatore also thought Maholanyi was qualified. (See Doc. 25-14 at 3 ¶ 4 ("Based on what I knew of Mr. Maholanyi and his

prior experience, I believed he had the experience and skills necessary to perform these responsibilities [of a branch manager] and to hit the ground running.").)

Nevertheless, SafeTouch asserts that the Tampa branch's new unit sales—the criterion by which SafeTouch contends it measures success[6]—were not as high as his superiors expected, and therefore Maholanyi was not qualified. (See Allen Dep. 36:2-37:18.) Allen testified that he discussed Maholanyi's poor performance with him, but Allen could not recall when the discussions occurred and conceded there is no documentation of the conversations. (Id. at 37:22-39:9.) Allen also testified that he never specifically told Maholanyi that there would be repercussions, including termination, for not increasing new unit sales, but felt it was implied. (Id. at 49:18-21, 50:10-17.) Salvatore testified that he and Maholanyi discussed the numbers Maholanyi was expected to bring in, specifically that SafeTouch was "looking to grow the branch at that time to 150 sales [a month]." (Salvatore Dep. 11:24-12:5.) However, resolving all doubts in favor of Maholanyi, he has sufficiently shown that he was qualified for the branch manager position. See Brockman, 545 F. Supp. 2d at 1254. Because Maholanyi has thus established a prima facie case of age discrimination, the

---

[6] See, e.g., Doc. 25-13 at 5 ¶ 12 (Allen Affidavit, stating "while important, I do not view revenue as the most important factor in measuring the success of a branch. Instead, new sales are the most important measurement of the success of a branch."); Doc. 25-14 at 4 ¶ 8 (Salvatore Affidavit, stating same). See also Allen Dep. 72:15-18 (testimony that branch success measured by new unit sales); Salvatore Dep. 11:12-14 (Doc. 25-6) ("I primarily focused on new sales and numbers of unit sales. I did not focus on revenue or dollar amounts."); id. at 12:21-24 (regardless of unit price, number of sales was important criterion); id. at 18:7-8 ("[T]he revenue was not important to me.").

burden shifts to SafeTouch to produce legitimate, nondiscriminatory reasons for his termination.

**B.     SafeTouch has proffered nondiscriminatory reasons for Maholanyi's termination**

"The employer's burden under the second prong of the test is 'exceedingly light' and merely requires that the employer proffer a legitimate nondiscriminatory reason." Bradley v. Pfizer, Inc., 440 F. App'x 805, 808 (11th Cir. 2011). The employer's burden is one of production, not persuasion. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

SafeTouch contends that Maholanyi was terminated based on his poor performance and his employees' inability to reach him. In the Eleventh Circuit, these are legitimate reasons that might motivate a reasonable employer to terminate an employee. See, e.g., Sordo v. Trail Auto Tag Agency, Inc., No. 15-22013-CIV-ALTONAGA/O'Sullivan, 2016 WL 1599525, at *4 (S.D. Fla. Apr. 21, 2016) ("[A]n employer's good-faith belief that an employee had a sub-par work performance can serve as a legitimate business reason for an adverse employment action.") (citing Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 873 (11th Cir. 2011)); Bassano v. Hellman Worldwide Logistics, Inc., 310 F. Supp. 2d 1270, 1277-79 (N.D. Ga. 2003) (branch's poor performance was among sufficient nondiscriminatory reasons for adverse employment action); Johnson v. AutoZone, Inc., 768 F. Supp. 2d 1124, 1149 (N.D. Ala. 2011) (employer satisfied "exceedingly light" burden to rebut presumption of discrimination where it identified the plaintiff's unavailability as reason why plaintiff was not considered for store manager position). Several SafeTouch employees,

including Allen, testified to Maholanyi's poor performance and unavailability. (See Allen Dep. 16:11-12 (testifying that he decided to rehire prior manager because "[e]ventually Drew's performance just was terrible."); id. at 19:14-21 (testifying to telling SafeTouch's HR department "[t]hat due to Drew's performance we were going to be making a manager's change."); id. at 20:13-21:12 (testifying that the decision to terminate Maholanyi was based on his branch's declining sales); see also note 6, supra (evidence that SafeTouch's measure of success is new unit sales).)

Aaron Anderson, the (younger) Tampa branch manager immediately preceding and following Maholanyi, testified that when he resumed the branch manager duties, employees told Anderson they had difficulty reaching Maholanyi, who took long weekends and left the office early. (Anderson Dep. 33:23-34:24 (Doc. 25-11).) Further, Anderson observed upon his return that there were outstanding customer issues that needed resolution, such as that money not been collected and products had been sold incorrectly; there were not enough salespeople working at the Tampa branch; and the office was unorganized. (Id. at 54:6-56:7, 67:7-69:24.)

Luke Swindle, the operational manager for the Tampa branch while Maholanyi was branch manager, also testified that he had difficulty reaching Maholanyi when Maholanyi was not in the office; and Maholanyi failed to provide sales consultants with necessary information, did not deal with problems or manage the office well, and was not prepared for meetings. (Swindle Dep. 7:15-8:13, 9:4-24, 10:12-16 (Doc. 25-9).) Swindle also expressed concerns over Maholanyi's handling of the relocation of the Tampa branch office. (Id. at 14:2-21.)

David Boaz, the officer manager of the Tampa branch during Maholanyi's tenure, wrote a letter stating that Maholanyi was frequently late, had to cancel appointments, took long weekends, and was not available to his salespeople. (See Boaz Dep. 14:9-15:20 (Doc. 25-8).) According to Boaz, Maholanyi canceled sales meetings and failed to provide sales numbers to corporate at least once or twice per week. (Id. at 25:2-15, 27:16-28:8.)

Lester Jackson, owner of SafeTouch, testified that he discussed Maholanyi with Allen "a lot" and expressed concerns about the declining numbers, because the Tampa branch "should do a lot more than this and it was not"; Jackson called the branch's numbers "terrible." (Jackson Dep. 6:18-20, 8:18-24, 9:3-7 (Doc. 25-7).)

Salvatore testified there were times neither he nor his staff could reach Maholanyi, and the unit sales numbers were dropping. (See Salvatore Dep. 20:24-25, 29:15-25; see also Allen Dep. 23:24-24:20 (testimony regarding Allen being contacted by other employees who were having difficulty reaching Maholanyi); Doc. 26 at 4-7, 17 (noting SafeTouch's concerns about Maholanyi's availability and failure to relocate his family).) Because SafeTouch has proffered legitimate nondiscriminatory reasons for Maholanyi's termination, the burden shifts back to Maholanyi to show that SafeTouch's reasons are pretext for age discrimination.

## C.    Maholanyi has not shown that the proffered reasons are pretextual

Where, as here, an employer has proffered legitimate, non-discriminatory reasons for the termination, "the presumption of discrimination collapses" and the plaintiff must produce evidence "sufficient to permit a reasonable trier of fact to find

that the reason the employer gave was not the real reason for the adverse employment decision, but, instead, was a pretext for discrimination, i.e., was 'a coverup for a . . . discriminatory decision.'" Mock v. Bell Helicopter Textron, Inc., 196 F. App'x 773, 774 (11th Cir. 2006) (quoting Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002)) (alteration in original); Sordo, 2016 WL 1599525, at *4 ("To create a genuine dispute of material fact on the question of pretext, [a plaintiff] must demonstrate that [the employer's] proffered legitimate business reason was not the real reason for [his] discharge.") (citing Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 1997)). A plaintiff's failure to produce such evidence entitles the employer to summary judgment. Mock, 196 F. App'x at 774.

A plaintiff can directly show pretext "by persuading the court that a discriminatory reason more likely motivated the employer," Kragor, 702 F.3d at 1308, or indirectly, "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason for the employment action that a reasonable factfinder could find them unworthy of credence." Thomas v. Dolgencorp, LLC, No. 15-13399, --- F. App'x ----, 2016 WL 1008622, at *2 (11th Cir. Mar. 15, 2016) (citing Springer v. Convergys Customer Mgmt. Grp., Inc., 509 F.3d 1344, 1348 (11th Cir. 2007)). In attempting to show pretext, however, "the plaintiff may not recast the reason, attempt to 'substitute his business judgment for that of the employer,' or 'simply quarrel[ ] with the wisdom of that reason,' assuming the 'reason is one that might motivate a reasonable employer.'" Proe v. Facts Servs., Inc., 491 F. App'x 135, 137 (11th Cir. 2012) (quoting Chapman, 229 F.3d at 1030). Rather, "[t]o meet his

12

burden under the third part of the test, the plaintiff must disprove all legitimate nondiscriminatory reasons proffered by the employer." <u>Bradley</u>, 440 F. App'x at 808.

Maholanyi admitted during his deposition that he did not know why he was terminated, but age discrimination was "an assumption" and "the best [he] could come up with on why this happened." (Maholanyi Dep. 212:25-213:8.) Courts in the Eleventh Circuit have considered such admissions in determining whether the plaintiff rebutted the defendant's legitimate, nondiscriminatory reason for the adverse employment action. In <u>Huchzermeyer v. AT&T Communications</u>, the plaintiff alleged that he was not rehired because of his age, but testified that, "[i]f I had every single qualification for those jobs, including experience, education, experience in the various departments, I am only led to believe what else could it have been but age discrimination." 746 F. Supp. 99, 103 (N.D. Ga. 1990), <u>aff'd sub nom.</u>, 929 F.2d 706 (11th Cir. 1991). The court found it particularly telling that "the plaintiff openly admit[ted] in his deposition that his suit is based completely on conjecture or a 'process of elimination'" that his age was the reason for the adverse employment action and, given that admission, it was "obvious that the plaintiff cannot establish that age played a substantial role in the defendant's failure to rehire him." <u>Id.</u> at 103-04 (citing <u>Mauter v. Hardy Corp.</u>, 825 F.2d 1554, 1558 (11th Cir. 1987)). Rather, the plaintiff could "only hope that a jury would engage in his 'process of elimination,' and from there make the inferential leap to a finding of age discrimination," which the court found insufficient to rebut the defendant's legitimate, nondiscriminatory reason. <u>Id.</u> at 104.

13

The inferential leap required from Maholanyi's similar admission to a finding of intentional age discrimination is likewise too great to rebut SafeTouch's proffered reasons for his termination. Thus, to show that age discrimination was the real reason for his termination, Maholanyi also relies upon four statements allegedly made by Allen in late 2011 or 2012:[7] (1) "Drew, I may just have to replace your old ass with someone younger and faster"; (2) "I remember in the old days you were a horse of a worker, now you're slow and old"; (3) "Why are you hiring a bunch of old sales people like you—they will never get the job done"; and (4) "Drew when are you going to start taking some Vitamins to speed your old ass up" (Doc. 31-8 at 2-3; <u>see also</u> Maholanyi Dep. 198:12-13, 204:16-18, 209:23-25, 210:20-22.)

Although Allen denied making the statements (Allen Dep. 71:2-18; Doc. 25-13 at 7 ¶ 21), and the EEOC charge does not mention the statements or allege discrimination on any date other than the date on which Maholanyi was terminated (<u>see</u> Doc. 25-3 at 2-4), such evidentiary disputes must be resolved in Maholanyi's favor. <u>See</u> <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1185 n.1 (11th Cir. 1997) (noting that dispute as to whether statement was made must be resolved in favor of non-movant employee at summary judgment stage). Moreover, the statements allegedly were made by Allen, who made the decision to terminate Maholanyi and instructed Salvatore to do so. (Salvatore Dep. 31:23-32:11.)

---

[7] Maholanyi thought the statements were made in both 2011 and 2012 but could not recall specific dates. (Maholanyi Dep. 199:19-200:22, 204:1-206:4.)

But, even assuming for purposes of summary judgment, that Allen made the statements, those statements, without more, are insufficient to establish pretext. See, e.g., Thomas, 2016 WL 1008622, at *2 ("A stray comment by a supervisor that is unrelated to the employment decision will usually not be sufficient to show pretext absent some additional evidence supporting a finding of pretext.") (citing Scott v. Suncoast Beverage Sales, Inc., 295 F.3d 1223, 1229 (11th Cir. 2002)); Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1309 (11th Cir. 2007) (discriminatory statements suggested discriminatory animus, but did not refute employer's proffer that plaintiff was terminated because of unsatisfactory performance). Although the statements are insensitive, there is no evidence that they were made in relation to the decision to terminate Maholanyi. Steger v. Gen. Elec. Co., 318 F.3d 1066, 1079 (11th Cir. 2003) (statements by decision makers unrelated to the decisional process at issue do not satisfy an employee's burden of producing evidence to rebut employer's proffered nondiscriminatory reasons) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)). Moreover, Maholanyi testified that Allen would "pick on" everyone during the meetings, so when Allen allegedly made the comments to Maholanyi it was just his "turn." (Maholanyi Dep. 220:6-221:20.)

In addition to Allen's alleged statements, as evidence of pretext Maholanyi also highlights that he increased revenue and broke sales records for the Tampa branch (Doc. 32 at 4), which SafeTouch does not dispute (Doc. 26 at 18-19). He suggests that new unit sales is not SafeTouch's benchmark for success. (Maholanyi Dep. 178:3-4 ("[T]he more important issue to Mr. Allen was the average dollars per unit."); id. at

180:7-21 (testifying that he was not aware of unit sales numbers before, during, or after his employment, because "[t]hat wasn't the focus there" and "[t]hat's not what they wanted."); id. at 270:4-7 (stating SafeTouch's "focus is revenue. It's all about revenue. The units are secondary. Units are important, but revenue is critical.").) While Maholanyi may disagree that unit sales is used as the measure of a branch's success, SafeTouch employees testified otherwise. With respect to his revenue-based achievements, regardless of how Maholanyi viewed his own job performance, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs . . . ." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010). Maholanyi must do more than question SafeTouch's business judgment and quarrel with its proffered reasons; he must "rebut each of the reasons to survive a motion for summary judgment." Crawford, 482 F.3d at 1308 (citing Chapman, 229 F.3d at 1037); Proe, 491 F. App'x at 137. He simply has not done so.

It is also noteworthy that Maholanyi was 51 years old, and thus already a member of the protected class, when Allen hired him to work at SafeTouch. (Maholanyi Dep. 8:20-21.) See Oliver v. Schwan's Sales Enters., Inc., No. 96-4-CIV-OC-10C, 1997 WL 689434, at *5 (M.D. Fla. June 25, 1997) ("Also of importance in this case is the fact that the same individual hired and fired the Plaintiff, and the fact that the Plaintiff was over 40 years of age when he was hired."). In such cases, courts can infer that the adverse employment decision was not discriminatory. Id. ("'[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong

inference exists that discrimination was not a determining factor for the adverse action taken by the employer.'" (quoting <u>Proud v. Stone</u>, 945 F.2d 796, 797 (4th Cir. 1991))); <u>see also</u> <u>Lowe v. J.B. Hunt Transp., Inc.</u>, 963 F.2d 173, 174-75 (8th Cir. 1992) ("The most important fact here is that plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing, and that the same people who hired him also fired him. If plaintiff had been forty when he was hired, and sixty five when he was fired, obviously this fact would not be so compelling. But here, the lapse of time was less than two years. It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later." (citation omitted)). Thus, that Allen both hired and terminated Plaintiff in a short period of time may be considered as evidence of nondiscrimination. <u>Smith v. Integrated Cmty. Oncology Network, LLC</u>, No. 3:08-cv-1196-J-25MCR, 2010 WL 3895571, at *4 n.11 (M.D. Fla. June 18, 2010) ("[E]ven if the Court declined to accord presumptive value to the fact that Mr. Holbrook both participated in the hiring decision and terminated Plaintiff in a short span of time, this fact <u>is</u> evidence of nondiscrimination." (emphasis in original)).

Furthermore, Allen and Salvatore, the SafeTouch employees who made the decision to terminate Maholanyi and relayed the decision to him, were aged 62 and 63 years at the time of Maholanyi's termination. (<u>See</u> Doc. 26 at 2, 9.) Where a person also within the protected class makes the adverse employment decision, it is even more difficult for a plaintiff to establish discrimination. <u>Moore v. Ala. Dep't of Corr.</u>, 137 F.

App'x 235, 239 n.4 (11th Cir. 2005) ("Where decision-makers are also members of a protected class, the plaintiff faces a greater burden.") (citing Elrod v. Sears Roebuck & Co., 939 F.2d 1466, 1467 (11th Cir. 1991)); Coles v. Anheuser Busch, Inc., No. 3:05-cv-281-J-33MCR, 2006 WL 2131301, at *6 (M.D. Fla. July 28, 2006) (in granting summary judgment in favor of employer as to race discrimination claim, the court noted that the plaintiff's pretext arguments were "hampered" by the fact that the decision makers were also members of the protected class); Welch v. Delta Airlines, Inc., 978 F. Supp. 1133, 1153 (N.D. Ga. 1997) (noting "it is extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff.") (emphasis added).

On its face, Maholanyi's most appealing argument for pretext is that he was never reprimanded for his performance or aware of employee complaints, given the lack of contemporaneous documentation of his allegedly deficient performance. (Doc. 32 at 4.) The lack of contemporaneous documentation supporting a defendant's proffered reason can in some cases support a finding of pretext. See, e.g., Booth v. Houston, 58 F. Supp. 3d 1277, 1298 (M.D. Ala. 2014) (noting that "[a]lthough the lack of contemporaneous documentation does not appear to be a procedural irregularity in Defendant's practices and my not be sufficient by itself to establish pretext," the "cumulative effect" of the evidence revealed inconsistencies and weaknesses that created a jury issue as to whether the proffered reasons were pretextual); Flagg v. Collier Cnty., Fla., No. 2:02-cv-274-FtM-29DNF, 2003 WL 22350943, at *6-7 (M.D. Fla. Aug. 15, 2003) (concluding that the plaintiff met her burden of showing pretext based

on the lack of contemporaneous documentation of alleged performance issues and evidence that she received national and local awards during relevant time period for her exemplary performance).

However, the Eleventh Circuit has found that where, as here, the employer lacks any formal review process, the absence of contemporaneous documentation was insufficient to show that the employer's proffered reasons were pretextual when the record was devoid of other evidence of discriminatory intent. See Wascura v. City of South Miami, 257 F.3d 1238, 1245-46 (11th Cir. 2001) (ADA and FMLA discrimination claims) ("Wascura next points to her long period of employment with the City and the lack of documentary evidence of any complaints concerning her performance as evidence that the City's proffered reasons for her termination were pretextual. While the lack of complaints or disciplinary reports in an employee's personnel file may support a finding of pretext, it is undisputed that there was no formal review process of the City Clerk." (citation omitted)).

Like the defendant in Wascura, it is undisputed that SafeTouch had no formal process by which branch managers' performance (deficient or otherwise) was documented or reviewed. (See, e.g., Allen Dep. 17:22-19:1 (testimony that SafeTouch has no written policy for disciplining branch managers, and Allen has "never really written up branch managers" because he "consider[ed] them upper [management]"); id. at 37:25-39:9 (testimony that Allen had only verbal conversations with Maholanyi about his performance numbers and did not keep records of the conversations); Salvatore Dep. 31:4-22 (testimony that Salvatore discussed Maholanyi's performance

issues with Allen but never documented the conversations, put Maholanyi on a performance improvement plan, or issued him a written reprimand).) During oral argument, counsel for SafeTouch conceded that there is no disciplinary documentation or performance evaluations for any branch managers, not just Maholanyi. Thus, this is not a case where the employer identifies an employee's poor performance as the reason for his termination, but such claim is belied by the evidence. Instead, the record shows that SafeTouch relied exclusively on informal verbal communications with respect to branch managers and that a number of SafeTouch managers and employees testified to Maholanyi's poor performance in a consistent way. Therefore, on these facts, the lack of documentation of Maholanyi's poor performance is not enough, without additional evidence, to create an issue of fact as to pretext.

## IV.    CONCLUSION

"Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002). To meet this burden, the law requires Maholanyi to show that age was the "but for" cause of his termination, not just a motivating factor. Gross, 557 U.S. at 180; Liebman, 808 F.3d at 1298. Viewing the evidence in the light most favorable to Maholanyi, however, he has failed to carry his burden, and no questions of material fact remain as to whether SafeTouch unlawfully discriminated against him based on his age. Mora, 597 F.3d at 1204.

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant SafeTouch of Tampa, Inc. and against Plaintiff Andras Maholanyi, terminate all pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of July, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

ab
Copies:

Counsel of record